w/ JAO

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
OCT 22 2019
at 10 o'clock and 16 min. ⊤ M
SUE BEITIA, CLERK

**ORIGINAL**

**Glen M. Winterbottom**
Plaintiff Pro Se
P. O. Box 109
Naalehu, Hawaii 96772
(808) 929-9060
gwinterbottom@msn.com

# In the United States District Court
# for the District of Hawaii

| | |
|---|---|
| **GLEN M. WINTERBOTTOM**, a disabled individual,<br>                Plaintiff Pro Se,<br>vs.<br>**DAVID T. UNDERRINER**, in his official capacity as President of Kaiser Foundation Health Plan and Hospitals of Hawaii, and **CATHERINE A. KORTZEBORN**, in her official capacity as Deputy Regional Administrator of U.S. Centers for Medicare and Medicaid Services, Region 9 - San Francisco,<br>       Defendants. | CIVIL ACTION NO. CV 19-00364-JAO-WRP<br><br>(Discrimination in medical care access under ADA Title III)<br><br>**PLAINTIFF'S ORAL STATEMENT IN OPPOSTION TO DEFENDANT DAVID T. UNDERRINER'S MOTION TO DISMISS COMPLAINT; CERTIFICATE OF SERVICE**<br><br>Hearing date: October 22, 2019 at 2:30 p.m. before Hon. Jill A. Otake |

**PLAINTIFF'S ORAL STATEMENT IN OPPOSITION TO**
**DEFENDANT DAVID T. UNDERRINER'S MOTION TO DISMISS COMPLAINT**

YOUR HONOR AND PARTIES:-

    This statement reiterates my strong opposition to Defendant David T. Underriner's (hereinafter "Defendant Kaiser's") Motion To Dismiss Complaint in this action filed electronically on August 8, 2019.

    In my Complaint I've requested that this Court grant my prayer for declaratory and injunctive relief so I may continue receiving uninterrupted critical medical care from Defendant Kaiser, my medical services provider for the past 23 continuous years, after I turn 65 on November 26 of this year, despite Defendants' arbitrary, capricious and blatantly unlawful actions to conspiratorially deny such Medicare Advantage coverage to myself and every other disabled resident of specific ZIP Code areas 96718, 96772 and 96777 on the Island of Hawaii,

1

County of Hawaii, while this service is provided in the 29 other postal zones of said island and county.

Mandatory authority for motions to dismiss in discrimination cases is found in *Bell Atlantic vs. Twombly*, 550 U.S. 544 (2007), where the court noted specifically in it's Syllabus that:

> This analysis does not run counter to *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, which held that "a complaint in an employment discrimination lawsuit [need] not contain specific facts establishing a prima facie case of discrimination." Here, the Court is not requiring heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.

The importance of paying close attention to statutory construction is highlighted by the well-publicized and contentious trio of cases currently before the United States Supreme Court concerning the proper definition and ramifications of the term "sex discrimination."

My Complaint relies primarily on the crystal clear and unambiguous language of two particular subsections of **42 U.S.C., Chapter 126, Subchapter III** [aka Title III of the Americans With Disabilities Act or ADA]—**Public Accommodations And Services Operated By Private Entities, §12182. Prohibition of discrimination by public accommodations, §§(b)(2) SPECIFIC PROHIBITIONS**, namely:

> **(A) Discrimination** For purposes of subsection (a), discrimination includes—
> (i) the imposition or application of eligibility criteria that <u>screen out or tend to screen out</u> an individual with a disability <u>or any class of individuals with disabilities</u> from fully and equally enjoying any goods, services, facilities, privileges, advantages or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges or accommodations being offered;
> (ii) a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations.

Defendant Kaiser has not surprisingly made no attempt whatsoever to address or explain away the plain language of these subsections in it's Motion To Dismiss submittals, and in a short section entitled <u>Plaintiff Does Not Allege Disability Discrimination</u> on pp. 2-3 of it's Reply

Memorandum, provided no mandatory authority to support it's position, and none of the three cases it did cite dealt with **ADA Title III** statute provisions.

The case of *Roe v. California Dept. of Developmental Services*, Case No. 16-cv-03745-WHO, 2017 WL 2311303, at p. 6 (N.D. Cal. May 26, 2017) was said to require that a Medicaid claimant under **ADA Title II** "must show that she was treated differently than she would have been treated if she were not disabled," but such restrictive criteria appears nowhere in the text of **ADA Title III**. Some earlier federal anti-discrimination legislation specifically refers to "discrimination solely because of disability," but that narrow definition is also notably lacking in **Title III** language, although there obviously has to be a nexus with disability.

In fact, the adoption of Defendants' phantom requirements would absurdly eviscerate any enforcement of **ADA Title III** architectural barrier provisions among others, since violators of such standards <u>don't</u> treat disabled persons any differently than able-bodied ones, which is why the infractions arise in the first place. It should be self-evident that Congress intended via it's broadly worded **ADA Title III** provisions to require public accommodations to take specific actions to make their goods and services available to the greatest extent reasonably possible to the disabled, even where no overt discrimination per se is involved.

As the United States Court of Appeals reasoned in *Helen vs. DiDario*, 46 F.3d 325, 335 (3rd Cir. 1995): "However, to the extent that *Choate* [*Alexander vs. Choate, 469 U.S.* 287 (1985)] is relevant to our analysis, it supports our holding that Congress did not intend to condition the protection of the ADA upon a finding of 'discrimination.' In *Choate*, the Supreme Court emphasized the factors which led to enactment of section 504. Discrimination against the handicapped was perceived by Congress to be most often the product, not of invidious animus, but rather of thoughtlessness and indifference—of benign neglect."

The architectural barriers prohibited by the legislation in question can also negatively affect non-disabled persons such as—among others—women pushing baby strollers, those temporarily using crutches, senior citizens unsteady on their feet, and even persons making commercial deliveries, so Defendant Kaiser's contention that unlawful discrimination cannot by definition impact the non-disabled likewise has no support in **ADA Title III** provisions.

It's undeniable that **Title III** statutes and resultant regulations would ring hollow if the legislation couldn't rectify the harms resulting from actions that discriminate by <u>effect</u> as well as by intentional design, and such logic has found widespread court support over the years, as noted above. I and all other disabled individuals living within the three excluded ZIP Code areas

nearing or having reached retirement age are indisputably being denied access to the same choice of Medicare Advantage plans enjoyed by all residents residing in the other 29 postal zones of the Island of Hawaii, and this disparate and thus discriminatory treatment of a protected class of disabled persons under the aforestated unequivocal **ADA Title III** provisions has formed the crux of my Complaint from the day it was filed.

I'm clearly not asking for any enhanced or personally tailored Medicare Advantage coverage for myself or anyone else, just the same standard benefits offered in the vast bulk of the County of Hawaii. So, the overriding question that remains to be answered in this case is what specific criteria was used to exclude the three regions, and whether such screening "can be shown to be necessary."

Defendants would have this Court believe that all anti-discrimination legislation is a one-size-fits-all proposition, without taking into account the fact that each separate statutory chapter, and often multiple subdivisions therein, contain different Congressionally-mandated purposes, definitions and other language.

As noted in an online Wikipedia article: "The courts have repeatedly held that when a statute is clear and unambiguous, the inquiry into legislative intent ends at that point. It is only when a statute could be interpreted in more than one fashion that legislative intent must be inferred from sources other than the actual text of the statute." The Supreme Court concurred in *Connecticut Nat'l Bank v. Germain*, 112 S. Ct. 1146, 1149 (1992):

> In any event, canons of construction are no more than rules of thumb that help courts determine the meaning of legislation, and in interpreting a statute a court should always turn first to one, cardinal canon before all others. <u>We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.</u> See, *e. g., United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241-242 (1989); *United States v. Goldenberg*, 168 U.S. 95, 102-103 (1897); *Oneale v. Thornton*, [10 U.S. *53*, 3 L. Ed. 150] 6 Cranch 53, 68 (1810). <u>When the words of a statute are unambiguous, then, this first canon is also the last: "judicial inquiry is complete."</u> *Rubin v. United States*, 449 U.S. 424, 430 (1981) (Emphasis and bracketed material added by Plaintiff.)

Defendant Kaiser would additionally like to self-servingly reframe my Complaint as a disagreement with mundane Medicare Act enrollment and eligibility requirements in order to unilaterally invoke **42 U.S.C. §405(h)** judicial preclusion, but this is simply not their prerogative nor is it supported by the obvious emphasis of my complaint from Day One.

I have indeed alleged several additional claims for relief, two of which do reference a statute and rule regarding Medicare. However, these are clearly only collateral and support the main thrust of my Complaint by showing that Medicare Advantage contractors are legally obligated to follow all ADA Title III and related anti-discrimination laws and regulations, and partial county service areas are not the norm for such contractors. These additional claims could be completely discarded without negating my primary ones.

Regarding jurisdiction, Defendant Kaiser has chosen to remain oblivious in it's Motion to the multiple avenues of jurisdiction conferred on this Court in the present matter, which extend far beyond the broad "catch-all" §1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). These include: 1) **28 U.S.C. Part IV, Chapter 85—District Courts; Jurisdiction, §1343. Civil rights and elective franchise, §§(a)(4)**; 2) **42 U.S.C. Chapter 126, Subchapter III—Public Accommodations And Services Operated By Private Entities, §12188. Enforcement, §§(a)(1)**; and 3) **42 U.S.C. Chapter 21, Subchapter II—Public Accommodations, §2000a-6. Jurisdiction; exhaustion of other remedies; exclusiveness of remedies; assertion of rights based on other Federal or State laws and pursuit of remedies for enforcement of such rights**. All these statutes were clearly flagged in my Complaint under the heading of <u>Jurisdiction, Venue And Statutory Interpretation</u>, and are discussed in detail therein.

I agree with Defendant Kaiser that the case of *Lujan vs. Defenders of Wildlife*, 505 U.S. 555, 112 S. Ct. 2130 (1992), specifies the minimum requirements for standing:

> Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact" - an invasion of a legally-protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical'". Second, there must be a causal connection between the injury and the conduct complained of - the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."
>
> The party invoking federal jurisdiction bears the burden of establishing these elements.... At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss, we "presum[e] that general allegations embrace those specific facts that are necessary to support the claim."

I firmly believe that I've plainly met all three above elements for standing. since my alleged injury is 1) "concrete" and imminent, 2) doesn't involve any parties not before this Court, and 3) would be easily resolved by a favorable decision.

Although Defendants have consistently attempted to belittle my concerns, being forced to change one's medical care provider after 23 continuous years in the midst of treatment for a life-threatening disease would likely be seen by any reasonable person—disabled or otherwise—as a serious threat to their health and well-being, particularly when it results from unlawful discrimination. Further, the importance of continuity of medical care is stressed in co-Defendant CMS's own **Medicare Managed Care Manual, Chapter 17-F, §120.6 - Continuity of Care**.

Lastly, this Court has the ability to easily resolve such an issue, since Defendants have always had readily available administrative means to correct <u>at any time</u> their unlawful actions via a consensual contract modification pursuant to **Medicare Managed Care Manual, Chapter 11 - Medicare Advantage Applications And Contract Requirements, Section 90 - Modification or Termination of an MA Contract By Mutual Consent**, which provides that "An MA contract may be modified or terminated by CMS or an MA organization at any time by mutual consent of both parties," and likely by other means as well, and the Court need only order them to do so.

IN CONCLUSION, Defendant Kaiser has failed in it's rambling and simplistic efforts to provide this Court with any lawful rationale to dismiss my case without further investigation into it's merits. Throwing out a veritable hodge-podge of specious conclusions and citations taken out of context and summarized in a single sentence or two, and hoping that at least something...anything...will "stick to the wall," is hardly the stuff of convincing argumentation. Thus, I respectfully ask this Honorable Court to deny Defendant Kaiser's Motion To Dismiss Complaint.

**DATED: Naalehu, Hawaii, October 22, 2019.**

*/s/ Glen M. Winterbottom*
_____
**GLEN M. WINTERBOTTOM**
Plaintiff Pro Se

# In the United States District Court
# for the District of Hawaii

| | |
|---|---|
| GLEN M. WINTERBOTTOM, a disabled individual,<br><br>                Plaintiff Pro Se,<br><br>vs.<br><br>DAVID T. UNDERRINER, in his official capacity as President of Kaiser Foundation Health Plan and Hospitals of Hawaii, and CATHERINE A. KORTZEBORN, in her official capacity as Deputy Regional Administrator of U.S. Centers for Medicare and Medicaid Services, Region 9 - San Francisco,<br><br>                Defendants. | CIVIL ACTION NO. CV 19-00364-JAO-WRP<br><br>(Discrimination in medical care access under ADA Title III)<br><br>**CERTIFICATE OF SERVICE** |

## CERTIFICATE OF SERVICE

**PLAINTIFF PRO SE GLEN M. WINTERBOTTOM** hereby certifies that on this date he served true and correct copies of the foregoing Plaintiff's Oral Statement In Opposition To Defendant David T. Underriner's Motion To Dismiss Complaint on Defendants' attorneys of record by facsimile or hand delivery as follows:

**Dianne W. Brookins**
**Daniel J. Cheng**
Attorneys for Defendant David T. Underriner
1001 Bishop Street, Suite 1800
Honolulu, Hawaii 96813
Facsimile: (808) 524-4591

**Sydney Spector (USAHI)**
Attorney for Defendant Catherine A. Kortzeborn
300 Ala Moana Boulevard, Room 6-100
Honolulu, Hawaii 96850
Facsimile: (808) 541-3752

**DATED: Naalehu, Hawaii, October 22, 2019.**

*/s/ Glen M. Winterbottom*
**GLEN M. WINTERBOTTOM**
Plaintiff Pro Se