IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| GLEN M. WINTERBOTTOM, | ) | CIVIL NO. 19-00364 JAO-WRP |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING DEFENDANT |
| | ) | DAVID T. UNDERRINER, IN HIS |
| vs. | ) | OFFICIAL CAPACITY AS PRESIDENT |
| | ) | OF KAISER FOUNDATION HEALTH |
| DAVID T. UNDERRINER, in his | ) | PLAN AND HOSPITALS OF HAWAII'S |
| official capacity as President of | ) | MOTION TO DISMISS COMPLAINT |
| Kaiser Foundation Health Plan and | ) | |
| Hospitals of Hawaii; CATHERINE | ) | |
| A. KORTZEBORN, in her official | ) | |
| capacity as Deputy Regional | ) | |
| Administrator of U.S. Centers for | ) | |
| Medicare and Medicaid Services, | ) | |
| Region 9 – San Francisco, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER GRANTING DEFENDANT DAVID T. UNDERRINER, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF KAISER FOUNDATION HEALTH PLAN AND HOSPITALS OF HAWAII'S MOTION TO DISMISS COMPLAINT

Plaintiff Glen M. Winterbottom ("Plaintiff") initiated this action for

disability discrimination because he will lose Kaiser Foundation Health Plan, Inc.

("Kaiser") medical benefits upon turning 65, as Kaiser does not offer Medicare

coverage in the zip code area where he resides.  Defendant David T. Underriner, in

his official capacity as President of Kaiser,[1] moves to dismiss this action because Plaintiff lacks standing, failed to exhaust administrative remedies, and fails to state a claim. For the following reasons, the Court GRANTS Kaiser's Motion to Dismiss Complaint. ECF No. 6.

<u>BACKGROUND</u>

Plaintiff, who is currently 64 years old, has been a member of Kaiser's Health Maintenance Organization since September 14, 1996. Compl. ¶ 7. In April 2019, Plaintiff learned that upon turning 65 on November 26, 2019, he will be unable to obtain Medicare coverage through Kaiser's Medicare Advantage ("MA") plan because the zip code in which he resides is one of the zip codes in the District of Ka'u on the Big Island—96718, 96772, and 96777—excluded from coverage. *Id.* ¶¶ 10, 15.

Plaintiff sought clarification from Kaiser administrators, and during a conference call, Kaiser employees informed Plaintiff that Kaiser cannot offer him its MA plan due to contractual obligations with the Centers for Medicare and Medicaid Services ("CMS"). *Id.* ¶ 17.

Plaintiff initiated this action on July 9, 2019. He asserts the following claims: (1) violation of Title III of the Americans with Disabilities Act ("ADA"),

---

[1] The Court will treat Defendant Underriner and Kaiser as one and the same for the purposes of this Order, and all references will be to Kaiser.

42 U.S.C. § 12182 (Counts 1 and 2); (2) violation of CMS's Medicare Managed Care Manual ("MMCM") § 10.5.2 (Count 3); (3) violation of 48 C.F.R § 1.602-1 (Count 4); and (4) violation of "at least spirit of" 42 C.F.R. § 422.2 (Count 5). Plaintiff requests declaratory and injunctive relief.  *Id.* at 12-14.

The parties timely filed their briefing.  However, at 10:16 a.m. on the day of the hearing, Plaintiff filed a document titled "Plaintiff's Oral Statement in Opposition to Defendant David T. Underriner's Motion to Dismiss Complaint." ECF No. 35.  This is an unauthorized surreply.  *See* Local Rule 7.2 (authorizing opposition and reply memoranda but prohibiting further or supplemental briefing without leave of court).  The Court nonetheless elects to consider it because Plaintiff is self-represented and because it does not change this Motion's disposition.  However, Plaintiff is cautioned that in the future, he may not file supplemental briefing without leave of court.  Any such briefing will be stricken.

## LEGAL STANDARDS

### A. Rule 12(b)(1)

Under Federal Rule of Civil Procedure ("FRCP") 12(b)(1), a district court must dismiss a complaint if it lacks subject matter jurisdiction to hear the claims alleged in the complaint.  Fed. R. Civ. P. 12(b)(1).  A jurisdictional attack pursuant to FRCP 12(b)(1) may be facial or factual.  *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted).  A facial attack challenges

3

the sufficiency of the allegations contained in a complaint to invoke federal jurisdiction, while a factual attack "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* District courts may review evidence beyond the complaint to resolve a factual attack on jurisdiction without converting a motion to dismiss into a motion for summary judgment. *See id.* (citation omitted). In such instances, courts "need not presume the truthfulness of the plaintiff's allegations." *Id.* (citation omitted); *see also Courthouse News Serv. v. Planet*, 750 F.3d 776, 780 (9th Cir. 2014) ("A factual challenge 'rel[ies] on affidavits or any other evidence properly before the court' to contest the truth of the complaint's allegations." (alteration in original) (citation omitted)). "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Safe Air*, 373 F.3d at 1039 (citation omitted).

FRCP 12(b)(1) also requires a district court to dismiss a complaint for lack of subject matter jurisdiction where a plaintiff lacks standing to sue. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) ("[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under [FRCP] 12(b)(1)." (citations and emphasis omitted)). When a plaintiff lacks constitutional standing, a

suit "is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *City of Oakland v. Lynch*, 798 F.3d 1159, 1163 (9th Cir. 2015) (quoting *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004)); *City of Los Angeles v. Cty. of Kern*, 581 F.3d 841, 845 (9th Cir. 2009).

In determining constitutional standing, the trial court has the authority "to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing." *Maya*, 658 F.3d at 1067 (citations omitted). Courts "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party" when "ruling on a motion to dismiss for want of standing." *Warth v. Seldin*, 422 U.S. 490, 501 (1975) (citation omitted).

B. Rule 12(b)(6)

FRCP 12(b)(6) authorizes dismissal of a complaint that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a Rule 12(b)(6) motion to dismiss, "the court accepts the facts alleged in the complaint as true," and "[d]ismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged." *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (alteration in original) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable

inferences are insufficient to defeat a motion to dismiss.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citation omitted); *Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000) (citation omitted).  Furthermore, the court need not accept as true allegations that contradict matters properly subject to judicial notice.  *See Sprewell*, 266 F.3d at 988 (citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  The tenet that the court must accept as true all of the allegations contained in the complaint does not apply to legal conclusions.  *See id.*  As such, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)) (some alterations in original).  If dismissal is ordered, the plaintiff should be granted leave to amend

6

unless it is clear that the claims could not be saved by amendment.  *See Swartz v.*

*KPMG LLP*, 476 F.3d 756, 760 (9th Cir. 2007) (citation omitted).

DISCUSSION

Kaiser seeks dismissal under both FRCP 12(b)(1) and 12(b)(6).  As for

FRCP 12(b)(1), Kaiser contends that Plaintiff lacks standing to complain about

Medicare benefits because, at age 64, he is not yet eligible for Medicare benefits

and even if he has standing, his claims are preempted by the Medicare Act.[2]  Mem.

in Supp. of Mot., ECF No. 6-1, at 6.

Alternatively, Kaiser argues that Plaintiff's claims against Kaiser must be

dismissed because its service area is controlled by CMS and can only be expanded

through CMS's regulatory approval process.  *Id.*  The Court addresses each

argument in turn.

I.     Judicial Notice

As a preliminary matter, the Court addresses Kaiser's request for judicial

notice of CMS's MMCM and of its Expansion Application.  *Id.* at 10 n.5

(requesting judicial notice and providing website where the MMCM can be found:

---

[2]  Preemption is evaluated under FRCP 12(b)(6).  *See Stewart v. U.S. Bancorp*, 297 F.3d 953, 957-58 (9th Cir. 2002).  And it is inapplicable here because Plaintiff does not assert state or common law claims.  *See Aguayo v. U.S. Bank*, 653 F.3d 912, 918 (9th Cir. 2011) (explaining ways in which federal law may preempt state law) (citation omitted); *Uhm v. Humana, Inc.*, 620 F.3d 1134, 1148 (9th Cir. 2010) (applying preemption as to the plaintiff's state law claims).

7

https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Downloads/
mc86c04.pdf).  Pursuant to Federal Rule of Evidence ("FRE") 201, courts can take
judicial notice of facts not subject to reasonable dispute because they are generally
known or "can be accurately and readily determined from sources whose accuracy
cannot reasonably be questioned."  Fed. R. Evid. 201.  The Court finds that judicial
notice is appropriate.  Both these documents contain facts that can be readily
determined from accurate sources and Plaintiff himself asserts a violation of the
MMCM and includes relevant portions of it in his Complaint.  The Court takes
judicial notice of the documents "without converting the motion to dismiss into a
motion for summary judgment."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th
Cir. 2003) (citations omitted).

II.    Whether Plaintiff Has Standing

Kaiser first challenges Plaintiff's standing to bring his claims.  Article III of
the Constitution limits the jurisdiction of the federal courts to certain "Cases" and
"Controversies."  U.S. Const. art. III, § 2, cl. 1; *see Clapper v. Amnesty Int'l USA*,
568 U.S. 398, 408 (2013) ("[N]o principle is more fundamental to the judiciary's
proper role in our system of government than the constitutional limitation of
federal-court jurisdiction to actual cases or controversies." (citation omitted)).  A
plaintiff is required to demonstrate three elements to establish that he or she has
"standing" to sue in federal court:  (1) "injury in fact" that is "concrete and

8

particularized" and "actual and imminent"; (2) the injury must be fairly traceable to defendant's conduct; and (3) the injury likely will be redressed through adjudication. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Spokeo, Inc. v. Robins*, __ U.S. __, 136 S. Ct. 1540, 1547 (2016) (citing *id.*) (other citation omitted). As the party invoking federal jurisdiction, the plaintiff must establish these elements. *See Spokeo*, __ U.S. __, 136 S. Ct. at 1547 (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)). At the pleading stage of a case, "the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Id.* (quoting *Warth*, 422 U.S. at 518) (footnote omitted). A plaintiff exclusively seeking declaratory and injunctive relief is required to additionally "show a very significant possibility of future harm." *San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996) (citation omitted).

    A. Injury in Fact

    "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, __ U.S. __, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560); *see Maya*, 658 F.3d at 1069. Allegations of possible future injury are insufficient; the "threatened injury must be *certainly impending* to constitute injury in fact." *Clapper*, 568 U.S. at 409 (citation omitted). A plaintiff may comply with the injury-in-fact requirement by alleging a

future injury, but only if he or she "is immediately in danger of sustaining some direct injury as the result of the challenged . . . conduct and the injury or threat of injury is both real and immediate, not conjectural or hypothetical." *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1142 (9th Cir. 2010) (emphases and citation omitted).

Kaiser argues that Plaintiff has not suffered any injury because he is not yet eligible for Medicare. Mem. in Supp. of Mot., ECF No. 6-1, at 7-8. Enrollment in Medicare part C—the part implicated in this case—requires entitlement to benefits under part A and enrollment under part B, 42 U.S.C. § 1395w-21(a)(3), both of which apply to individuals age 65 and older. *See* 42 U.S.C. § 1395c; Mem. in Supp. of Mot., ECF No. 6-1, at 8. Because Plaintiff is not yet entitled to Medicare benefits, Kaiser contends that he is not impacted by the scope of its MA service areas.

Plaintiff asserts that the quickly approaching possibility that he will be forced to change healthcare providers constitutes a "'concrete' and actionable threat" to his health because he is undergoing treatment for prostate cancer. Opp'n, ECF No. 12, at 2, 5. The Court disagrees.

Medicare is a federal health insurance program administered by CMS benefitting those aged 65 and older, individuals under age 65 with certain disabilities, and individuals of all ages with End-Stage Renal Disease. *See Parra*

*v. PacifiCare of Ariz., Inc.*, 715 F.3d 1146, 1152 (9th Cir. 2013); *United States v. Scan Health Plan*, No. CV 09-5013-JFW (JEMx), 2017 WL 4564722, at *1 (C.D. Cal. Oct. 5, 2017). Eligible Medicare beneficiaries may select coverage under Medicare Part A (Hospital Insurance) and Part B (Medical Insurance), or Medicare Advantage, which is a private plan option under Part C. *See Scan Health Plan*, 2017 WL 4564722, at *1 (citing 42 U.S.C. § 1395w-21(a)).

Here, Plaintiff is currently ineligible for Medicare and does not become eligible until November 26, 2019, his sixty-fifth birthday. Therefore, he has yet to suffer any injury. A threat of injury can satisfy this prong but not under the present circumstances. Plaintiff merely alleges that he *will be* forced to change healthcare providers because he does not reside within Kaiser's service area, not that he will lose medical coverage altogether. Although deprivation of medical coverage could constitute an injury in fact, Plaintiff does not face such an injury here. *See*, *e.g.*, *Ability Ctr. of Greater Toledo v. Lumpkin*, 808 F. Supp. 2d 1003, 1017 (N.D. Ohio 2011) (finding an injury in fact where the plaintiff was "unable to get needed treatment and medication without the medical coverage to which she may be entitled" due to the defendant's "failure to make a timely determination as to [her] eligibility for Medicaid," and "[t]he prospect of a lengthy (and apparently on-going) disability determination process pose[d] an imminent risk to her well-being").

At the hearing, Plaintiff identified switching doctors and discrimination under the ADA as his injuries, and admitted he will not lose medical coverage. Under the present circumstances, switching doctors and discrimination do not, separately or together, constitute an "injury in fact" for standing purposes.  That Plaintiff may be deprived of his *preferred* insurer and physician is not a sufficient injury for standing purposes, even if immediate.[3]

Accordingly, Plaintiff has not sufficiently asserted an injury in fact.  Even if he had, he fails to satisfy the redressability requirement.

## B. Fairly Traceable to Kaiser's Conduct

Plaintiff sufficiently asserts that his alleged injury is traceable to Kaiser's conduct.  The causation inquiry focuses on "whether the alleged injury can be traced to the defendant's challenged conduct, rather than to that of some

---

[3] Examples of injuries constituting an injury in fact demonstrate why Plaintiff's described injury is insufficient.  *See, e.g., Maya*, 658 F.3d at 1069 (deeming the expenditure of money that would not have been spent absent the defendants' actions a "quintessential injury-in-fact"); *Krottner*, 628 F.3d at 1143 (finding an injury in fact where the plaintiffs alleged "a credible threat of real and immediate harm stemming from the theft of a laptop containing their unencrypted personal data"); *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 950 (9th Cir. 2002) (finding injury in fact where the risk of harm to the plaintiffs' crops was sufficient to afford standing because it was "not so speculative or diffuse as to render the controversy a hypothetical one"); *Pritikin v. Dep't of Energy*, 254 F.3d 791, 797 (9th Cir. 2001) (finding a cognizable injury where the plaintiff's inability to receive medical screening was due to the Agency for Toxic Substances and Disease Registry's failure to implement a medical program).

other actor not before the court." *See Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1152 (9th Cir. 2000) (citations omitted).  In other words, "the causal connection put forward for standing purposes cannot be too speculative, or rely on conjecture about the behavior of other parties, but need not be so airtight at this stage of the litigation as to demonstrate that the plaintiffs would succeed on the merits."  *Id.* (citation omitted); *see Canyon Cty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 974 n.7 (9th Cir. 2008) (identifying "less rigorous" causation threshold at the dismissal stage of the proceedings (citations omitted)).  When a "chain of causation 'involves numerous third parties' whose 'independent decisions' collectively have a 'significant effect' on plaintiffs' injuries, the Supreme Court and [the Ninth Circuit] have found the causal chain too weak to support standing at the pleading stage."  *Maya*, 658 F.3d at 1070 (citations omitted).

Plaintiff blames Kaiser for his anticipated inability to obtain Medicare plan C coverage through its MA plan.  Pursuant to 42 U.S.C. § 1395w-21(b)(1)(A), Plaintiff is precluded from electing Kaiser's MA plan because the plan does not serve Plaintiff's geographic area.  Although CMS considered and approved the current coverage areas, 42 C.F.R. § 422.2, it did so in response to Kaiser's request

for coverage of a partial county service area.[4]  Therefore, Plaintiff's alleged

injuries are traceable to Kaiser's conduct.

     C. <u>Redressability</u>

Finally, Plaintiff is required to demonstrate that "it is likely, as opposed to

merely speculative, that the injury will be redressed by a favorable decision."

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181

(2000); *see Mayfield v. United States*, 599 F.3d 964, 971 (9th Cir. 2010) (citations

omitted).  In pertinent part, Plaintiff requests an injunction requiring Kaiser to offer

MA coverage in the currently excluded geographic zones until it obtains

authorization to provide coverage island-wide.  Compl. at 14, ¶¶ 8-9.

As earlier discussed, Plaintiff has not suffered an injury.  To the extent he

believes that his anticipated injury—losing coverage from Kaiser due to

unavailability in his geographic region—can be redressed by a favorable decision,

he is mistaken.  CMS is vested with the authority to consider and approve coverage

areas, and the zip code in which Plaintiff resides is currently excluded.  Thus, the

---

[4]  With its Reply, Kaiser included a letter that Shawn Ripley, its Medicare Contract
Compliance Manager, received on August 23, 2019 from CMS via its online
portal, approving partial county justification.  Reply, Declaration of Shawn M.
Ripley ("Ripley Decl."), Ex. A, ECF No. 21-1 ¶ 2.  The letter is not dated, but
there is no reason to question Mr. Ripley's representation that it was received on
August 23, 2019, after the commencement of this action.  In any event, it appears
that the parties do not dispute that the coverage area—including the excluded zip
codes—has been in effect for many years.

Court cannot remedy the anticipated injury because it cannot compel Kaiser to provide coverage for an excluded zip code.  Accordingly, Plaintiff fails to establish standing and the Court lacks jurisdiction over this action.  Insofar as the deficiencies could not be cured by amendment, the Complaint is DISMISSED as to Kaiser without leave to amend.

III.   Exhaustion

Kaiser argues that even if Plaintiff has standing to assert his claims, the Court lacks jurisdiction because Plaintiff has not exhausted the administrative process required by the Medicare Act.[5]  Mem. in Supp. of Mot., ECF No. 6-1, at 12-13.  Plaintiff counters that he made a good faith effort to resolve his concerns prior to initiating this action, including alerting Kaiser about its ADA violations, and forwarding administrative complaints and a draft of the present Complaint to the Hawaii Civil Rights Commission, the Civil Rights Division of the U.S.

---

[5]  Kaiser conflates exhaustion and preemption.  Reply, ECF No. 21, at 10.  These distinct legal concepts are reviewed under different legal frameworks and dismissal standards.  *See Uhm*, 620 F.3d at 1140-50.  At the hearing, counsel explained that cases discussing the Medicare Act referred to the exhaustion issue as preemption.  While Medicare Act cases often refer to preemption, they do so in the context of traditional preemption jurisprudence and preemption is certainly distinct from exhaustion.  *See Prime Healthcare Servs. v. Humana Ins. Co.*, Case No. EDCV 16-1097-VAP (JEMx), 2018 WL 8131763, at *4 n.2 (C.D. Cal. June 22, 2018) (distinguishing between exhaustion and preemption) (citing *Uhm*, 620 F.3d at 1141-43, 1148-50); *Shakespeare v. SCAN Health Plan, Inc.*, Case No. 3: 17-CV-568-BTM-MDD, 2018 WL 340422, at *2-5 (S.D. Cal. Jan. 8, 2018) (analyzing exhaustion and preemption separately).

Department of Justice, and the Office for Civil Rights of the U.S. Department of Health and Human Services.  None of these actions satisfy the applicable exhaustion requirement.

Section 405(h) of Title 42 of the U.S. Code "is a complete bar to federal question jurisdiction for claims arising under the Medicare Act unless 'application of § 405(h) would not simply channel review through the agency, but would mean no review at all.'"  *Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 779 (9th Cir. 2000) (quoting *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 17 (2000)).   Therefore, "[j]udicial review of claims arising under the Medicare Act is available only after the Secretary renders a 'final decision' on the claim, in the same manner as is provided in 42 U.S.C. § 405(g) for old age and disability claims arising under Title II of the Social Security Act."  *Heckler v. Ringer*, 466 U.S. 602, 605 (1984) (footnote omitted); *see Uhm*, 620 F.3d at 1140 (stating that pursuant to the Medicare Act's exhaustion requirement, 42 U.S.C. § 405(h), a plaintiff's "sole avenue for judicial review" for claims arising under the Act is 42 U.S.C. § 405(g) (footnote omitted)).[6]  Only after an individual claimant pushes his

---

[6]  Section 405(h) provides:

> The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing.  No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or

(continued . . .)

or her claim "through all designated levels of administrative review" is a "final decision" rendered on a Medicare claim.  *Heckler*, 466 U.S. at 606 (footnote omitted).

According to the Supreme Court, a claim "arises under" the Medicare Act in the following circumstances:  "(1) where the 'standing and the substantive basis for the presentation of the claims' is the Medicare Act; and (2) where the claims are 'inextricably intertwined' with a claim for Medicare benefits."  *Uhm*, 620 F.3d at 1141 (quoting *Heckler*, 466 U.S. at 614-15) (other citation omitted).  The Ninth Circuit has determined that "cleverly concealed claims for benefits" and even state

---

(. . . continued)

> governmental agency except as herein provided.  No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(h).  Section 405(g) provides:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.  Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia.

42 U.S.C. § 405(g).

17

law claims may "arise under" the Medicare Act. *Uhm*, 620 F.3d at 1141-42 (alterations and citations omitted). Although courts should read the term "arising under" broadly, "in certain special cases, deference to the Secretary's conclusion as to the utility of pursuing the claim through administrative channels is not always appropriate." *Ardary v. Aetna Health Plans of Cal., Inc.*, 98 F.3d 496, 500 (9th Cir. 1996) (quoting *Heckler*, 466 U.S. at 618).

Notwithstanding Plaintiff's characterization of his claims, they are all founded upon his anticipated inability to obtain Medicare coverage from Kaiser when he turns 65 on November 26, 2019. *See, e.g.*, *Uhm*, 620 F.3d at 1142-43 ("In sum, contrary to the Uhms' argument, our case law establishes that where, at bottom, a plaintiff is complaining about the denial of Medicare benefits—here, drug benefits under Part D—the claim 'arises under' the Medicare Act."). Plaintiff's standing and substantive basis for Counts 3 through 5 of his Complaint is the Medicare Act, 42 U.S.C. § 1395 *et seq.*, despite his reliance on improper provisions. Although Title III of the ADA is the substantive basis for Counts 1 and 2, those claims are "inextricably intertwined" with Counts 3 through 5 because "at bottom," Plaintiff seeks to obtain Medicare coverage from Kaiser once he turns 65. Because Plaintiff's claims all arise under the Medicare Act, he is required to exhaust the claims before seeking judicial review. Until he does, the Court is

18

precluded from asserting jurisdiction over his claims against Kaiser.[7]

The Court acknowledges that due to the uniqueness and rarity of Plaintiff's claims, it is unclear whether he could obtain agency review. If he could not obtain agency review, his claims would not "arise under" the Medicare Act. Even if Plaintiff's claims do not arise under the Medicare Act, however, his claims should be dismissed for the reasons discussed below.

IV.   Sufficiency of Plaintiff's Claims

Even if Plaintiff established standing and had exhausted his claims, his claims would fail as a matter of law. In addition to its arguments above, Kaiser alternatively argues that Plaintiff fails to state a claim upon which relief can be granted. Specifically, Kaiser contends that Plaintiff fails to allege disability discrimination and the relief he wishes to obtain—the expansion of Kaiser's service area for its MA plan—can only be accomplished through the process set forth by Medicare regulations. At the hearing, Plaintiff clarified that the crux of this action is an ADA violation,[8] yet he simultaneously contends that Kaiser's

---

[7] Both Plaintiff and Kaiser quote from the dissent in *Elgin v. Department of the Treasury*, 567 U.S. 1, 25 (2012), *see* Opp'n, ECF No. 12, at 7-8; Reply, ECF No. 21, at 10, without pointing out that the quotations came from the dissent. In any event, there is ample precedent governing this issue without resorting to a dissenting opinion to adjudicate this Motion.

[8] Indeed, Plaintiff explained that Counts 1 and 2 are his primary claims, while Counts 3 through 5 are collateral. The Court nevertheless addresses each count in this Order.

purported discrimination is premised on its failure to offer Medicare coverage for Plaintiff's residential zip code.

    A.  <u>ADA Claims (Counts 1 and 2)</u>

    Plaintiff alleges that as a "public accommodation," Kaiser is prohibited from applying Medicare eligibility criteria that discriminates against individuals with disabilities.  Compl. ¶ 22.  Plaintiff asserts that Kaiser has "an explicit duty under ADA Title III regulations to explore all 'reasonable' ways that Kaiser's MA coverage can be offered uniformly to disabled residents throughout the County of Hawaii, without regard to what ZIP Code they find themselves assigned."  *Id.* ¶ 36.

    Title III of the ADA prohibits discrimination against individuals "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a); *Karczewski v. DCH Mission Valley LLC*, 862 F.3d 1006, 1009 (9th Cir. 2017) ("Title III of the ADA prohibits discrimination by public accommodations." (citation omitted)).  "Public accommodations must start by considering how their facilities are used by non-disabled guests and then take reasonable steps to provide disabled guests with a like experience."  *Karczewski*, 862 F.3d at 1009 (quoting *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1135 (9th Cir. 2012)).

20

Plaintiff complains that Kaiser is violating 42 U.S.C. § 12182(b)(2)(A)(i)-(ii), which prohibits:

> (i) the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered;
>
> (ii) a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations[.]

42 U.S.C. § 12182(b)(2)(A)(i)-(ii).  A plaintiff alleging discrimination under Title III must show the following:

> (1) he is disabled as that term is defined by the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; (3) the defendant employed a discriminatory policy or practice; and (4) the defendant discriminated against the plaintiff based upon the plaintiff's disability by (a) failing to make a requested reasonable modification that was (b) necessary to accommodate the plaintiff's disability.

*Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1082 (9th Cir. 2004).  Even

accepting Plaintiff's allegations as true, his ADA claims fail.[9]

### 1. Place of Public Accommodation

Plaintiff's ADA claims arise out of his anticipated inability to obtain Medicare coverage under Kaiser's MA plan once he becomes eligible for Medicare at age 65.  However, Kaiser is not a "public accommodation" for the purposes of Plaintiff's ADA claims.  The ADA identifies the following private entities as public accommodations, "if the operations of such entities affect commerce--"

> (A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor;
>
> (B) a restaurant, bar, or other establishment serving food or drink;
>
> (C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;
>
> (D) an auditorium, convention center, lecture hall, or other place of public gathering;
>
> (E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;
>
> (F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station,

---

[9]  Plaintiff discussed *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 581 (1999), at the hearing, arguing that it is directly on point.  *Olmstead* is inapplicable.  There, the Supreme Court interpreted Title II of the ADA to forbid arbitrary segregation of disabled individuals in large state institutions.  *See id.* at 597.  Here, Plaintiff invokes *Title III*, not Title II, of the ADA.

office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;

(G) a terminal, depot, or other station used for specified public transportation;

(H) a museum, library, gallery, or other place of public display or collection;

(I) a park, zoo, amusement park, or other place of recreation;

(J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;

(K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and

(L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

42 U.S.C. § 12181(7).  Critically, the foregoing are "actual, physical places where goods or services are open to the public, and places where the public gets those goods or service."  *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000).  While these categories "'should be construed liberally' to afford people with disabilities 'equal access' to the wide variety of establishments available to the nondisabled," *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 676-77 (2001) (citations omitted), "some connection between the good or service complained of and an actual physical place is required."  *Weyer*, 198 F.3d at 1114

(footnote omitted); *see Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1047 (9th Cir. 2000).

Here, even if Kaiser has a physical office, accessibility to the office has no relationship to the availability of Medicare based on Plaintiff's zip code. In an analogous case, the Ninth Circuit explained:

> Certainly, an insurance office is a place where the public generally has access. But this case is not about such matters as ramps and elevators so that disabled people can get to the office. The dispute in this case, over terms of a contract that the insurer markets through an employer, is not what Congress addressed in the public accommodations provisions.

*Weyer*, 198 F.3d at 1114. For these reasons, Kaiser, in its administration of its MA plan, is not a place of public accommodation and Plaintiff's ADA claims fail as a matter of law.

### 2. Discriminatory Policy and Discrimination Based on Disability

Even if Kaiser constituted a place of public accommodation as defined by the ADA, Plaintiff has not and cannot allege that Kaiser's Medicare coverage is discriminatory or that he suffered discrimination on the basis of his purported disability. Kaiser's Medicare coverage exclusions apply to specific zip codes on the Big Island and therefore apply equally to disabled and nondisabled individuals. Plaintiff even conceded at the hearing that the discrimination is as to zip code, not disability. Any disparity in Medicare coverage on the Big Island, and throughout the State of Hawai'i, is therefore a function of residence, not disability. The ADA

24

does not prohibit discrimination based on the place of residence.  *Cf. Taylor v. Colorado Dep't of Health Care Policy & Fin.*, 811 F.3d 1230, 1235 & n.7 (10th Cir. 2016) (holding that the plaintiff's ADA discrimination claim fails because she was treated the same as all Medicaid recipients in her county and noting that the claim would fail even if the plaintiff were compared to Medicaid recipients within Colorado because the difference in services provided to the plaintiff and others in Colorado "is based on where [the plaintiff] lives, not the existence of a disability"). Accordingly, Plaintiff does not state a claim for discrimination against Kaiser under Title III of the ADA.  Counts 1 and 2 are DISMISSED without leave to amend because amendment would be futile.

      B.  Violation of CMS's Regulations (Count 3)

      Plaintiff alleges violations of CMS's MMCM, Chapter 4, § 10.5.2, apparently claiming that Kaiser will deny him Medicare coverage due to his disability.  Section 10.5.2 prohibits Medicare Advantage Organizations ("MAOs") from denying, limiting, or conditioning "enrollment to individuals eligible to enroll in an MA plan offered by the organization on the basis of any factor that is related to health status, including, but not limited to . . . [d]isability."  CMS, Pub. No. 100-16, MMCM, ch. 4, § 10.5.2 (2016), https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Downloads/mc86c04.pdf.  Section 10.5.2 additionally requires MAOs to:

> Comply with the provisions of section 1557 of the Affordable Care Act, title VI of the Civil Rights Act of 1964, the Age Discrimination Act of 1975, section 504 of the Rehabilitation Act of 1973, title II of the Americans with Disabilities Act (ADA) of 1990, and the Genetic Information Nondiscrimination Act of 2008[.]

*Id.* (italics omitted).

Plaintiff's claim fails on two grounds.  First, this case does not involve disability discrimination, notwithstanding Plaintiff's efforts to characterize Kaiser's actions as such.  Because Kaiser's coverage exclusions apply to specific zip codes on the Big Island, the exclusions apply equally to disabled and nondisabled individuals.

Second, the MMCM does not carry the force of law.  *See Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000) (explaining that "interpretations contained in policy statements, agency manuals, and enforcement guidelines . . . lack the force of law"); *United States v. Alameda Gateway Ltd.*, 213 F.3d 1161, 1168 (9th Cir. 2000) (holding that a party cannot rely on a regulation that "was not intended to have the force of law"); *Kaiser Found. Health Plan, Inc. v. Sebelius*, No. 08-4890 SC, 2009 WL 2044699, at *9 (N.D. Cal. July 9, 2009) ("[A]gency manuals do not universally create rights that carry the force of law[.]" (citations omitted)).

For these reasons, Count 3 is DISMISSED as to Kaiser.  Because it could not be saved by amendment, the dismissal is without leave to amend.

26

C.  Violation of 48 C.F.R. § 1.602-1 (Count 4)

Plaintiff alleges that the contract between Kaiser and CMS violates 48

C.F.R. § 1.602-1(b), which is part of the Federal Acquisition Regulation ("FAR"),

because it incorporates and abets unlawful discrimination against disabled

individuals.  Compl. ¶ 45.  Plaintiff asserts that Kaiser cannot use its contract with

CMS as an excuse for discrimination.

The FAR establishes policies for acquisition by governmental executive

agencies, *see* 48 C.F.R. § 1.101, and applies to all acquisitions defined in part 2 of

the FAR, except as expressly excluded.  *See* 48 C.F.R. § 1.104.  Section 1.602-1,

provides that "[n]o contract shall be entered into unless the contracting officer

ensures that all requirements of law, executive orders, regulations, and all other

applicable procedures, including clearances and approvals, have been met."  48

C.F.R. § 1.602-1(b).

Other Medicare-related provisions exempt CMS from complying with the

FAR:  "CMS may enter into contracts under this part without regard to Federal and

Departmental acquisition regulations set forth in title 48 of the CFR . . . if [it]

determines that those provisions are inconsistent with the efficient and effective

administration of the Medicare program."  42 C.F.R. § 422.503(c); *see also* 42

U.S.C. § 1395w-27(c)(5) ("The authority vested in the Secretary by this part may

be performed without regard to . . . regulations relating to the making,

27

performance, amendment, or modification of contracts of the United States as the

Secretary may determine to be inconsistent with the furtherance of the purpose of

this subchapter.").  The MMCM likewise authorizes CMS to "enter into contracts

with MA organizations without regard to the Federal and Departmental acquisition

regulations set forth in Title 48 of the CFR.[10]  The regulations governing MA

contracts are set forth in the requirements for the MA program in Title 42 of the

CFR."  CMS, Pub. No. 100-16, MMCM, ch. 11, § 20 (2016), https://www.cms.

gov/Regulations-and-Guidance/Guidance/Manuals/Downloads/mc86c11.pdf.

Therefore, the FAR does not govern here and Plaintiff's claim fails as a matter of

law.

This claim also fails because a violation of the FAR does not, without more,

give rise to a private cause of action.  *See, e.g.*, *Pascual v. Boeing Co.*, Case No.

SACV 12-02081-CJC(MLGx), 2014 WL 12738094, at *3 n.2 (C.D. Cal. May 12,

2014), *aff'd*, 700 F. App'x 646 (9th Cir. 2017); *Gordon v. Fed. IT Consulting,

LLC*, No. SA-19-CV-00405-FB-ESC, 2019 WL 4696417, at *5 (W.D. Tex. Sept.

25, 2019); *Eland Indus., Inc. v. Project Mgmt. Quality Servs., Inc.*, No. 7:18-CV-

71-D, 2019 WL 1294646, at *3 (E.D.N.C. Mar. 20, 2019); *Wallace v. Access Self*

---

[10]  Although the Court earlier determined that the MMCM does not carry the force
of law, it was in the context of whether Plaintiff could state a viable claim against
Kaiser pursuant to the MMCM.  In this context, the MMCM provides guidance and
authority as to CMS's actions.

*Storage Red Oak*, No. 3:17-CV-1602-M-BH, 2017 WL 3017233, at *1 (N.D. Tex. June 20, 2017), *report and recommendation adopted*, No. 3:17-CV-1602-M-BH, 2017 WL 3016879 (N.D. Tex. July 14, 2017); *Ciliv v. UXB Int'l, Inc.*, Civil Action No. 7:12-cv-290, 2012 WL 5245323, at *4 (W.D. Va. Oct. 22, 2012).  Because there is no private cause of action for a violation of the FAR, and Count 4 could not be saved by amendment, it is DISMISSED without leave to amend as to Kaiser.

      D.  <u>Violation of 42 C.F.R. § 422.2 (Count 5)</u>

      Plaintiff's final claim alleges a violation of 42 C.F.R. § 422.2, the definitions provision of Part 422, which "establishes standards and sets forth the requirements, limitations, and procedures for Medicare services furnished, or paid for, by Medicare Advantage organizations through Medicare Advantage plans."  42 C.F.R. § 422.1(b).  The claim concerns the definition of "service area."[11]  Plaintiff

---

[11]  "Service area" is defined as:

> a geographic area that for local MA plans is a county or multiple
> counties, and for MA regional plans is a region approved by CMS
> within which an MA–eligible individual may enroll in a particular
> MA plan offered by an MA organization.  Facilities in which
> individuals are incarcerated are not included in the service area of an
> MA plan.  Each MA plan must be available to all MA–eligible
> individuals within the plan's service area.  In deciding whether to
> approve an MA plan's proposed service area, CMS considers the
> following criteria:

(continued . . .)

challenges the purportedly unequal application of the county integrity rule to MA

providers.  Compl. ¶ 51.  Plaintiff urges "the Court to consider what the original

drafters' likely beneficial objectives may have been, as contrasted with the clearly

neutered regulations and rules that now prevail."  *Id.*

Section 422.2, which merely contains definitions, does not provide a private

right of action.  *Cf. Home Orthopedics Corp. v. Rodríguez*, CIV NO. 11-1591

(DRD/SCC), 2012 WL 12533038, at *9 (D.P.R. May 21, 2012).  Indeed, a private

right of action does not even exist for Part 422's substantive provisions.  *See id.*

(holding that the plaintiff's "claims under the Medicare Advantage credentialing

regulations, 42 C.F.R. § 422.204 . . . fail[ed]" because the plaintiff "point[ed] to,

and [the court could] find, no authority suggesting that a private right of action

exists under this regulation").  Accordingly, the Court GRANTS the Motion and

---

(. . . continued)
      (1) For local MA plans:

      (i) Whether the area meets the "county integrity rule" that a service
      area generally consists of a full county or counties.

      (ii) However, CMS may approve a service area that includes only a
      portion of a county if it determines that the "partial county" area is
      necessary, nondiscriminatory, and in the best interests of the
      beneficiaries.  CMS may also consider the extent to which the
      proposed service area mirrors service areas of existing commercial
      health care plans or MA plans offered by the organization.

42 C.F.R. § 422.2.

DISMISSES Count 5 as to Kaiser.  Insofar as amendment would be futile, the

dismissal is without leave to amend.

CONCLUSION

In accordance with the foregoing, the Court HEREBY GRANTS Kaiser's

Motion in its entirety.  The Complaint is DISMISSED WITH PREJUDICE as

against Kaiser.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, October 31, 2019.

Jill A. Otake
United States District Judge

Civil No. 19-00364 JAO-WRP; *Winterbottom v. Underriner*; ORDER GRANTING DEFENDANT
DAVID T. UNDERRINER, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF KAISER
FOUNDATION HEALTH PLAN AND HOSPITALS OF HAWAII'S MOTION TO DISMISS
COMPLAINT

31