IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| GLEN M. WINTERBOTTOM, | ) | CIVIL NO. 19-00364 JAO-WRP |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING DEFENDANT |
| | ) | CATHERINE A. KORTZEBORN'S |
| vs. | ) | MOTION TO DISMISS COMPLAINT |
| | ) | |
| DAVID T. UNDERRINER, in his | ) | |
| official capacity as President of | ) | |
| Kaiser Foundation Health Plan and | ) | |
| Hospitals of Hawaii; CATHERINE | ) | |
| A. KORTZEBORN, in her official | ) | |
| capacity as Deputy Regional | ) | |
| Administrator of U.S. Centers for | ) | |
| Medicare and Medicaid Services, | ) | |
| Region 9 – San Francisco, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER GRANTING DEFENDANT CATHERINE A. KORTZEBORN'S MOTION TO DISMISS COMPLAINT

Plaintiff Glen M. Winterbottom ("Plaintiff") initiated this action for

disability discrimination in anticipation of losing his Kaiser Foundation Health

Plan, Inc. ("Kaiser") medical benefits upon turning 65, as Kaiser does not offer

Medicare coverage in the zip code area where he resides. Defendant Catherine A.

Kortzeborn, in her official capacity as Deputy Regional Administrator of U.S.

Centers for Medicare and Medicaid Services, Region 9 – San Francisco ("CMS"),

moves to dismiss this action for lack of subject matter jurisdiction and failure to

state a claim. For the following reasons, the Court GRANTS CMS's Motion to Dismiss Complaint. ECF No. 26.

## BACKGROUND

I.      Factual History

Plaintiff, who recently turned 65 years old—and is now Medicare eligible—was a member of Kaiser's Health Maintenance Organization since September 14, 1996. *See* Compl. ¶ 7. In April 2019, Plaintiff learned that once he turned 65 on November 26, 2019, he would be unable to obtain Medicare coverage through Kaiser's Medicare Advantage ("MA") plan because the zip code in which he resides is one of the zip codes in the District of Kaʻu on Hawaiʻi Island—96718, 96772, and 96777—excluded from coverage. *Id.* ¶¶ 10, 15.

Plaintiff sought clarification from Kaiser administrators, and during a conference call, Kaiser employees informed Plaintiff that Kaiser cannot offer him its MA plan due to contractual obligations with CMS. *Id.* ¶ 17.

II.     Procedural History

Plaintiff initiated this action on July 9, 2019. He asserts the following claims: (1) violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182 (Counts 1 and 2); (2) violation of CMS's Medicare Managed Care Manual ("MMCM") § 10.5.2 (Count 3); (3) violation of 48 C.F.R § 1.602-1

(Count 4); and (4) violation of "at least spirit of" 42 C.F.R. § 422.2 (Count 5).

Plaintiff requests declaratory and injunctive relief. *Id.* at 12-14.

On October 31, 2019, the Court issued an Order Granting Defendant David

T. Underriner, in His Official Capacity as President of Kaiser Foundation Health

Plan and Hospitals of Hawaii's Motion to Dismiss Complaint ("Order"). ECF No.

37. The Court determined that Plaintiff lacked standing, failed to exhaust

administrative remedies, and failed to assert any viable claims. *Id.* Plaintiff sought

reconsideration of the Order, ECF No. 40, which the Court denied. ECF No. 43.

LEGAL STANDARDS

I.    Rule 12(b)(1)

Under Federal Rule of Civil Procedure ("FRCP") 12(b)(1), a district court

must dismiss a complaint if it lacks subject matter jurisdiction to hear the claims

alleged in the complaint. Fed. R. Civ. P. 12(b)(1). A jurisdictional attack pursuant

to FRCP 12(b)(1) may be facial or factual. *See Safe Air for Everyone v. Meyer*,

373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted). A facial attack challenges

the sufficiency of the allegations contained in a complaint to invoke federal

jurisdiction, while a factual attack "disputes the truth of the allegations that, by

themselves, would otherwise invoke federal jurisdiction." *Id.* District courts may

review evidence beyond the complaint to resolve a factual attack on jurisdiction

without converting a motion to dismiss into a motion for summary judgment. *See*

*id.* (citation omitted). In such instances, courts "need not presume the truthfulness of the plaintiff's allegations." *Id.* (citation omitted); *see also Courthouse News Serv. v. Planet*, 750 F.3d 776, 780 (9th Cir. 2014) ("A factual challenge 'rel[ies] on affidavits or any other evidence properly before the court' to contest the truth of the complaint's allegations." (alteration in original) (citation omitted)). "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Safe Air*, 373 F.3d at 1039 (citation omitted).

FRCP 12(b)(1) also requires a district court to dismiss a complaint for lack of subject matter jurisdiction where a plaintiff lacks standing to sue. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) ("[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under [FRCP] 12(b)(1)." (citations and emphasis omitted)). When a plaintiff lacks constitutional standing, a suit "is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *City of Oakland v. Lynch*, 798 F.3d 1159, 1163 (9th Cir. 2015) (quoting *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004)); *City of Los Angeles v. County of Kern*, 581 F.3d 841, 845 (9th Cir. 2009).

In determining constitutional standing, the trial court has the authority "to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing." *Maya*, 658 F.3d at 1067 (citations omitted). Courts "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party" when "ruling on a motion to dismiss for want of standing." *Warth v. Seldin*, 422 U.S. 490, 501 (1975) (citation omitted).

II.    Rule 12(b)(6)

FRCP 12(b)(6) authorizes dismissal of a complaint that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a Rule 12(b)(6) motion to dismiss, "the court accepts the facts alleged in the complaint as true," and "[d]ismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged." *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (alteration in original) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citation omitted); *Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000) (citation omitted). Furthermore, the court need not accept as

true allegations that contradict matters properly subject to judicial notice. *See Sprewell*, 266 F.3d at 988 (citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The tenet that the court must accept as true all of the allegations contained in the complaint does not apply to legal conclusions. *See id.* As such, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)) (some alterations in original). If dismissal is ordered, the plaintiff should be granted leave to amend unless it is clear that the claims could not be saved by amendment. *See Swartz v. KPMG LLP*, 476 F.3d 756, 760 (9th Cir. 2007) (citation omitted).

<u>DISCUSSION</u>

CMS argues that dismissal is appropriate because Plaintiff lacks Article III and prudential standing to bring the present challenges; his claims are barred by the doctrine of sovereign immunity; and he otherwise fails to assert a viable cause of action. Mem. in Supp. of Mot., ECF No. 26-1 at 1.

I.    <u>Judicial Notice</u>

As a preliminary matter, the Court addresses CMS's request for judicial notice of its MMCM. Reply, ECF No. 34 at 3 n.1 (requesting judicial notice and providing website where the MMCM can be found: https://www.cms.gov/ Regulations-and-Guidance/Guidance/Manuals/Downloads/mc86c17f.pdf). Pursuant to Federal Rule of Evidence ("FRE") 201, courts can take judicial notice of facts not subject to reasonable dispute because they are generally known or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. The Court finds that judicial notice is appropriate. The MMCM contains facts that can be readily determined from accurate sources and Plaintiff himself asserts a violation of the MMCM and includes relevant portions of it in his Complaint and Opposition. The Court takes judicial notice of the MMCM "without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citations omitted).

II.     Standing

CMS first challenges Plaintiff's standing to bring his claims.  In every federal case, standing is a threshold matter that the plaintiff must establish.  *See Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014).  "[S]tanding jurisprudence contains two strands:  Article III standing, which enforces the Constitution's case-or-controversy requirement, and prudential standing, which embodies 'judicially self-imposed limits on the exercise of federal jurisdiction."  *Id.* (citations omitted).

A.     Article III / Constitutional Standing

Article III of the Constitution limits the jurisdiction of the federal courts to certain "Cases" and "Controversies."  U.S. Const. art. III, § 2, cl. 1; *see Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) ("[N]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." (citation omitted)).  A plaintiff is required to demonstrate three elements to establish that he or she has "standing" to sue in federal court:  (1) "injury in fact" that is "concrete and particularized" and "actual and imminent"; (2) the injury must be fairly traceable to defendant's conduct; and (3) the injury likely will be redressed through adjudication.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992);

*Spokeo, Inc. v. Robins*, __ U.S. __, 136 S. Ct. 1540, 1547 (2016) (citing *id.*) (other citation omitted).  As the party invoking federal jurisdiction, the plaintiff must establish these elements.  *See Spokeo*, __ U.S. __, 136 S. Ct. at 1547 (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)).   At the pleading stage of a case, "the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Id.* (quoting *Warth*, 422 U.S. at 518) (footnote omitted).  A plaintiff exclusively seeking declaratory and injunctive relief is required to additionally "show a very significant possibility of future harm."  *San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996) (citation omitted).

     1.    <u>Injury in Fact</u>

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Spokeo*, __ U.S. __, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560); *see Maya*, 658 F.3d at 1069.

CMS argues that Plaintiff has not alleged an injury in fact because although he prefers to continue receiving coverage from Kaiser, he does not allege that he would experience access to care issues once he becomes eligible for Medicare benefits, or that he would be worse off due to the lack of Kaiser coverage in his

geographic area.[1]  Mem. in Supp. of Mot., ECF No. 26-1 at 10.  Plaintiff

characterizes his injury as being forced to change medical care providers after 23

years while undergoing treatment for a life-threatening disease, particularly when

the unavailability of Kaiser coverage is based on unlawful discrimination.  Opp'n,

ECF No. 32 at 4.  He relies on MMCM Chapter 17f, section 120.6[2] to support his

---

[1]  CMS also contends that Plaintiff has not alleged that he meets the requirements
for enrolling in an MA plan.  Mem. in Supp. of Mot., ECF No. 26-1 at 10.
Enrollment in Medicare part C—the part implicated in this case—requires
entitlement to benefits under part A and enrollment under part B, 42 U.S.C.
§ 1395w-21(a)(3), both of which apply to individuals aged 65 and older.  *See* 42
U.S.C. § 1395c.  Plaintiff does not challenge this assertion.

   Medicare is a federal health insurance program administered by CMS
benefitting those aged 65 and older, individuals under age 65 with certain
disabilities, and individuals of all ages with End-Stage Renal Disease.  *See Parra
v. PacifiCare of Ariz., Inc.*, 715 F.3d 1146, 1152 (9th Cir. 2013); *United States v.
Scan Health Plan*, No. CV 09-5013-JFW (JEMx), 2017 WL 4564722, at *1 (C.D.
Cal. Oct. 5, 2017).  Eligible Medicare beneficiaries may select coverage under
Medicare Part A (Hospital Insurance) and Part B (Medical Insurance), or
Medicare Advantage, which is a private plan option under Part C.  *See Scan Health
Plan*, 2017 WL 4564722, at *1 (citing 42 U.S.C. § 1395w-21(a)).

[2]  Section 120.6 provides:

   Continuity of care refers to the continuous flow of care in a timely and
   appropriate manner.  Continuity includes:

      • Linkages between primary and specialty care;

      • Coordination among specialists;

      • Appropriate combinations of prescribed medications;

(continued . . .)

entitlement to continuity of care.  But section 120.6 does not mandate retention

and/or continuity of medical insurance coverage with an individual's current

provider when he or she enrolls in Medicare.  Rather, it concerns Medicare

enrollees and pertains to continuance of coverage when an HMO becomes

insolvent.  *See* 42 C.F.R. § 417.407(f) (identifying as one of the requirements for a

competitive medical plan the protection of enrollees against the risk of insolvency

and the loss of benefits); *id.* § 417.122(b) (describing protection against loss of

benefits if an HMO becomes insolvent and ways in which benefits must be

continued).

Indeed, Plaintiff merely alleges that he will be forced to change healthcare

providers because he does not reside within Kaiser's service area, not that he will

lose medical coverage altogether.  Although deprivation of medical coverage could

_____

(. . . continued)
　　　　　• Coordinated use of ancillary services;

　　　　　• Appropriate discharge planning; and

　　　　　• Timely placement at different levels of care including
　　　　　hospital, skilled nursing and home health care.

(42 CFR 417.407(f), 42 CFR 417.122(b)) In the case of insolvency the
HMO must continue to provide benefits to all enrollees for the
duration of the contract period for which payment was made.

CMS, Pub. No. 100-16, MMCM, ch. 17f, § 120.6 (2005), https://www.cms.
gov/Regulations-and-Guidance/Guidance/Manuals/Downloads/mc86c17f.pdf.

constitute an injury in fact, Plaintiff does not face such an injury here. *See*, *e.g.*, *Ability Ctr. of Greater Toledo v. Lumpkin*, 808 F. Supp. 2d 1003, 1017 (N.D. Ohio 2011) (finding an injury in fact where the plaintiff was "unable to get needed treatment and medication without the medical coverage to which she may be entitled" due to the defendant's "failure to make a timely determination as to [her] eligibility for Medicaid," and "[t]he prospect of a lengthy (and apparently on-going) disability determination process pose[d] an imminent risk to her well-being").

At the hearing on Kaiser's motion to dismiss, Plaintiff identified switching doctors and discrimination under the ADA as his injuries, and admitted he will not lose medical coverage. Under the present circumstances, switching doctors and discrimination do not, separately or together, constitute an "injury in fact" for standing purposes. That Plaintiff may be deprived of his *preferred* insurer and physician is not a sufficient injury for standing purposes.[3] And the discrimination Plaintiff alleges is not an injury, as discussed in Section IV.A below.

---

[3] Examples of injuries constituting an injury in fact demonstrate why Plaintiff's described injury is insufficient. *See, e.g., Maya*, 658 F.3d at 1069 (deeming the expenditure of money that would not have been spent absent the defendants' actions a "quintessential injury-in-fact"); *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1143 (9th Cir. 2010) (finding an injury in fact where the plaintiffs alleged "a credible threat of real and immediate harm stemming from the theft of a laptop containing their unencrypted personal data"); *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 950 (9th Cir. 2002) (finding injury in fact where the risk of (continued . . .)

Accordingly, Plaintiff has not sufficiently asserted an injury in fact. Even if he had, he fails to satisfy prongs two and three.

### 2. Fairly Traceable to CMS's Conduct

Plaintiff's alleged injury is not traceable to CMS's conduct. The causation inquiry focuses on "whether the alleged injury can be traced to the defendant's challenged conduct, rather than to that of some other actor not before the court." *See Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1152 (9th Cir. 2000) (citations omitted). In other words, "the causal connection put forward for standing purposes cannot be too speculative, or rely on conjecture about the behavior of other parties, but need not be so airtight at this stage of the litigation as to demonstrate that the plaintiffs would succeed on the merits." *Id.* (citation omitted); *see Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 974 n.7 (9th Cir. 2008) (identifying "less rigorous" causation threshold at the dismissal stage of the proceedings (citations omitted)). When a "chain of causation 'involves numerous third parties' whose 'independent decisions' collectively have a

---

(. . . continued)
harm to the plaintiffs' crops was sufficient to afford standing because it was "not so speculative or diffuse as to render the controversy a hypothetical one"); *Pritikin v. Dep't of Energy*, 254 F.3d 791, 797 (9th Cir. 2001) (finding a cognizable injury where the plaintiff's inability to receive medical screening was due to the Agency for Toxic Substances and Disease Registry's failure to implement a medical program).

'significant effect' on plaintiffs' injuries, the Supreme Court and [the Ninth Circuit] have found the causal chain too weak to support standing at the pleading stage." *Maya*, 658 F.3d at 1070 (citations omitted).

Plaintiff blames CMS for his inability to obtain Medicare plan C coverage through Kaiser's MA plan. Pursuant to 42 U.S.C. § 1395w-21(b)(1)(A), Plaintiff is precluded from electing Kaiser's MA plan because the plan does not serve Plaintiff's geographic area. Although CMS considered and approved the current coverage areas, *see* 42 C.F.R. § 422.2, it only did so in response to Kaiser's request for coverage of a partial county service area. Therefore, Plaintiff's alleged injuries are not traceable to CMS's conduct.

### 3. Redressability

Finally, Plaintiff cannot demonstrate that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000); *see Mayfield v. United States*, 599 F.3d 964, 971 (9th Cir. 2010) (citations omitted).

In pertinent part, Plaintiff requests an injunction requiring Kaiser to offer MA coverage in the currently excluded geographic zones until it obtains authorization from CMS to provide coverage island-wide. Compl. at 14, ¶ 8. To the extent he believes that his injury—losing coverage from Kaiser due to

unavailability in his geographic region—can be redressed by a favorable decision, he is mistaken.

Plaintiff assumes that the Court can easily resolve the present issue by ordering CMS and Kaiser to correct their "unlawful actions via a consensual contract modification" pursuant to MMCM, Chapter 11, section 90. Opp'n, ECF No. 32 at 4. Section 90 authorizes modification or termination of an MA contract "by CMS or an MA organization at any time by written mutual consent of both parties." CMS, Pub. No. 100-16, MMCM, ch. 11, § 90 (2006), https://www.cms. gov/Regulations-and-Guidance/Guidance/Manuals/Downloads/mc86c11.pdf. CMS explains that the service area expansion Plaintiff seeks falls outside the scope of the modification contemplated by § 90. Reply, ECF No. 34 at 4. Instead, Kaiser must initiate any service area expansion and CMS would then review the application. *See* Part C – Medicare Advantage and 1876 Cost Plan Expansion Application, https://www.cms.gov/Medicare/Medicare-Advantage/Medicare AdvantageApps/Downloads/cy-2020-part-c-ma-and-1876-cost-plan-expansion-application3.pdf. Therefore, the Court cannot remedy the lack of coverage because it cannot force Kaiser to apply for an expansion of coverage to include Plaintiff's zip code, nor direct CMS to approve any such application. Accordingly, Plaintiff fails to establish standing and the Court lacks jurisdiction over this action. Insofar

as these deficiencies could not be cured by amendment, the Complaint is

DISMISSED as to CMS without leave to amend.

B.    Prudential Standing

CMS also contends that Plaintiff lacks prudential standing[4] to challenge its

service area determination because Plaintiff cannot intervene in its contracting

process with Medicare Advantage organizations ("MAOs").  Mem. in Supp. of

Mot., ECF No. 26-1 at 9.  Because multiple bases exist for the dismissal of this

action against CMS as set forth below, the Court need not address this argument.

III.    Sovereign Immunity

CMS additionally argues that Plaintiff's ADA claims (Counts 1 and 2) are

barred by sovereign immunity.  Mem. in Supp. of Mot., ECF No. 26-1 at 11-12.

Plaintiff surmises that Congress generally waived sovereign immunity for suits

brought under the ADA, *see* Opp'n, ECF No. 32 at 5, but his contention fails.

"Absent a waiver, sovereign immunity shields the Federal Government and

its agencies from suit."  *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) (citations

omitted).  This doctrine "applies to federal agencies and to federal employees

acting within their official capacities."  *Hodge v. Dalton*, 107 F.3d 705, 707 (9th

---

[4]  "[L]ack of *statutory* standing requires dismissal for failure to state a claim,
[while] lack of *Article III* standing requires dismissal for lack of subject matter
jurisdiction under Federal Rule of Civil Procedure 12(b)(1)."  *Maya*, 658 F.3d at
1067 (citations omitted).

Cir. 1997) (citation omitted).  Plaintiffs bringing suit against the federal government bear "the burden of showing an unequivocal waiver of immunity." *Baker v. United States*, 817 F.2d 560, 562 (9th Cir. 1987) (citation omitted); *see also Hodge*, 107 F.3d at 707 ("Any waiver of immunity must be 'unequivocally expressed,' and any limitations and conditions upon the waiver 'must be strictly observed and exceptions thereto are not to be implied.'" (citation omitted)).

The federal government has not waived its sovereign immunity with respect to the ADA.  *See Agee v. United States*, 72 Fed. Cl. 284, 289 (2006); *Gray v. United States*, 69 Fed. Cl. 95, 102 (2005) ("[N]o method exists by which a party may file suit against the federal government in a private cause of action for a violation of the terms of the ADA." (citation omitted)).   Plaintiff has not provided any authority  establishing an unequivocal waiver of sovereign immunity in the ADA, its implementing regulations, or any other authority.  Consequently, the Court lacks subject matter jurisdiction over Plaintiff's ADA claims.

IV.    Sufficiency of Plaintiff's Claims

Even if Plaintiff established standing and his ADA claims were not barred by sovereign immunity, all claims would fail as a matter of law.  In addition to its arguments above, CMS alternatively argues that Plaintiff fails to allege a viable

claim against it.  At the hearing on Kaiser's motion to dismiss, Plaintiff clarified

that the crux of this action is an ADA violation.[5]

A.    ADA Claims (Counts 1 and 2)

Plaintiff alleges that Kaiser colluded with CMS to deny coverage to all

disabled and other residents in the subject zip codes.  Compl. ¶ 22.  Plaintiff asserts

that CMS has "an explicit duty under ADA Title III regulations to explore all

'reasonable' ways that Kaiser's MA coverage can be offered uniformly to disabled

residents throughout the County of Hawaii, without regard to what ZIP Code they

find themselves assigned."  *Id.* ¶ 36.

The ADA does not protect Plaintiff from claimed zip code discrimination by

a government entity.  Title III of the ADA prohibits discrimination against

individuals "on the basis of disability in the full and equal enjoyment of the goods,

services, facilities, privileges, advantages, or accommodations of any place of

public accommodation by any person who owns, leases (or leases to), or operates a

place of public accommodation."  42 U.S.C. § 12182(a); *Karczewski v. DCH

Mission Valley LLC*, 862 F.3d 1006, 1009 (9th Cir. 2017) ("Title III of the ADA

prohibits discrimination by public accommodations." (citation omitted)).  "Public

accommodations must start by considering how their facilities are used by non-

---

[5] Plaintiff explained that Counts 1 and 2 are his primary claims, while Counts 3
through 5 are collateral.  The Court nevertheless addresses each count in this
Order.

disabled guests and then take reasonable steps to provide disabled guests with a like experience." *Karczewski*, 862 F.3d at 1009 (quoting *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1135 (9th Cir. 2012)).

Plaintiff complains that CMS violates 42 U.S.C. § 12182(b)(2)(A)(i)-(ii), which prohibits:

> (i) the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered;
>
> (ii) a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations[.]

42 U.S.C. § 12182(b)(2)(A)(i)-(ii). A plaintiff alleging discrimination under Title III must show the following:

> (1) he is disabled as that term is defined by the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; (3) the defendant employed a discriminatory policy or practice; and (4) the defendant discriminated against the plaintiff based upon the plaintiff's disability by (a) failing to make a requested reasonable modification that was (b) necessary to accommodate the plaintiff's disability.

*Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1082 (9th Cir. 2004). Even

accepting Plaintiff's allegations as true, his ADA claims fail.

Plaintiff's ADA claims arise from his inability to obtain Medicare coverage under Kaiser's MA plan. However, CMS is not a "public accommodation" for the purposes of Plaintiff's ADA claims. *See Agee*, 72 Fed. Cl. at 289 ("[U]nder Title III, the Federal Government is not a private entity operating a public accommodation or service." (citation omitted)); *Shankar v. U.S. Dep't of Homeland Sec.*, No. 13-CV-01490 NC, 2014 WL 523960, at *4 (N.D. Cal. Feb. 6, 2014) ("[T]he federal government is not subject to the provisions of either Title II or Title III of the ADA." (citations omitted)). Although Plaintiff concedes as much, he nevertheless argues that CMS must be included as a party to enforce ADA provisions in its contractual relationship with Kaiser. Opp'n, ECF No. 32 at 5. But "the federal government, its agencies, and its officials are either expressly excluded or otherwise exempt from the definitions of entities subject to suit under the [ADA]." *Petramala v. U.S. Dep't of Justice*, 481 F. App'x 395, 396 (9th Cir. 2012) (citation omitted); *see Seina v. Fed. Det. Ctr.-Honolulu*, CIV. NO. 16-00051 LEK-KJM, 2016 WL 6775633, at *3 (D. Haw. Nov. 15, 2016) ("[T]he ADA applies only to state and local entities, not to the United States government, its agencies, or employees." (citations omitted)). Because the ADA does not apply to CMS, Plaintiff's ADA claims must be DISMISSED with prejudice.

B.     Violation of CMS's Regulations (Count 3)

Plaintiff alleges violations of the MMCM, Chapter 4, § 10.5.2.  Section

10.5.2 prohibits MAOs from denying, limiting, or conditioning "enrollment to

individuals eligible to enroll in an MA plan offered by the organization on the

basis of any factor that is related to health status, including, but not limited to . . .

[d]isability."  CMS, Pub. No. 100-16, MMCM, ch. 4, § 10.5.2 (2016), https://

www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Downloads/

mc86c04.pdf.  Section 10.5.2 additionally requires MAOs to:

> Comply with the provisions of section 1557 of the Affordable
> Care Act, title VI of the Civil Rights Act of 1964, the Age
> Discrimination Act of 1975, section 504 of the Rehabilitation
> Act of 1973, title II of the Americans with Disabilities Act
> (ADA) of 1990, and the Genetic Information
> Nondiscrimination Act of 2008[.]

*Id.* (italics omitted).

Plaintiff's claim fails on two grounds.  First, this case does not involve

disability discrimination, notwithstanding Plaintiff's efforts to characterize

Defendants' actions as such.  Because Kaiser's coverage exclusions apply to

specific zip codes on Hawaiʻi Island, the exclusions apply equally to disabled and

nondisabled individuals.

Second, the MMCM does not carry the force of law.  *See Christensen v.

Harris County*, 529 U.S. 576, 587 (2000) (explaining that "interpretations

contained in policy statements, agency manuals, and enforcement guidelines . . .

lack the force of law"); *United States v. Alameda Gateway Ltd.*, 213 F.3d 1161, 1168 (9th Cir. 2000) (holding that a party cannot rely on a regulation that "was not intended to have the force of law"); *Kaiser Found. Health Plan, Inc. v. Sebelius*, No. 08-4890 SC, 2009 WL 2044699, at *9 (N.D. Cal. July 9, 2009) ("[A]gency manuals do not universally create rights that carry the force of law[.]" (citations omitted)).

For these reasons, Count 3 is DISMISSED as to CMS.  Because it could not be saved by amendment, the dismissal is without leave to amend.

C.      Violation of 48 C.F.R. § 1.602-1 (Count 4)

Plaintiff alleges that the contract between Kaiser and CMS violates 48 C.F.R. § 1.602-1(b), which is part of the Federal Acquisition Regulation ("FAR"), because it incorporates and abets unlawful discrimination against disabled individuals.  Compl. ¶ 45.

But the FAR does not govern the contract here.  Rather, it establishes policies for acquisition by governmental executive agencies, *see* 48 C.F.R. § 1.101, and applies to all acquisitions defined in part 2 of the FAR, except as expressly excluded.  *See* 48 C.F.R. § 1.104.  Section 1.602-1 provides that "[n]o contract shall be entered into unless the contracting officer ensures that all requirements of law, executive orders, regulations, and all other applicable procedures, including clearances and approvals, have been met."  48 C.F.R. § 1.602-1(b).

Other Medicare-related provisions exempt CMS from complying with the FAR: "CMS may enter into contracts under this part without regard to Federal and Departmental acquisition regulations set forth in title 48 of the CFR . . . if [it] determines that those provisions are inconsistent with the efficient and effective administration of the Medicare program." 42 C.F.R. § 422.503(c); *see also* 42 U.S.C. § 1395w-27(c)(5) ("The authority vested in the Secretary by this part may be performed without regard to . . . regulations relating to the making, performance, amendment, or modification of contracts of the United States as the Secretary may determine to be inconsistent with the furtherance of the purpose of this subchapter."). The MMCM likewise authorizes CMS to "enter into contracts with MA organizations without regard to the Federal and Departmental acquisition regulations set forth in Title 48 of the CFR.[6] The regulations governing MA contracts are set forth in the requirements for the MA program in Title 42 of the CFR." CMS, Pub. No. 100-16, MMCM, ch. 11, § 20 (2006), https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Downloads/mc86c11.pdf. Therefore, the FAR does not govern here and Plaintiff's claim fails as a matter of law.

---

[6] Although the Court earlier determined that the MMCM does not carry the force of law, it was in the context of whether Plaintiff could state a viable claim against CMS pursuant to the MMCM. In this context, the MMCM provides guidance and authority as to CMS's actions.

This claim also fails because a violation of the FAR does not, without more, give rise to a private cause of action. *See, e.g.*, *Pascual v. Boeing Co.*, Case No. SACV 12-02081-CJC(MLGx), 2014 WL 12738094, at *3 n.2 (C.D. Cal. May 12, 2014), *aff'd*, 700 F. App'x 646 (9th Cir. 2017); *Gordon v. Fed. IT Consulting, LLC*, No. SA-19-CV-00405-FB-ESC, 2019 WL 4696417, at *5 (W.D. Tex. Sept. 25, 2019); *Eland Indus., Inc. v. Project Mgmt. Quality Servs., Inc.*, No. 7:18-CV-71-D, 2019 WL 1294646, at *3 (E.D.N.C. Mar. 20, 2019); *Wallace v. Access Self Storage Red Oak*, No. 3:17-CV-1602-M-BH, 2017 WL 3017233, at *1 (N.D. Tex. June 20, 2017), *report and recommendation adopted*, No. 3:17-CV-1602-M-BH, 2017 WL 3016879 (N.D. Tex. July 14, 2017); *Ciliv v. UXB Int'l, Inc.*, Civil Action No. 7:12-cv-290, 2012 WL 5245323, at *4 (W.D. Va. Oct. 22, 2012). Because there is no private cause of action for a violation of the FAR, and Count 4 could not be saved by amendment, it is DISMISSED without leave to amend against CMS.

### D. Violation of 42 C.F.R. § 422.2 (Count 5)

Plaintiff's final claim alleges a violation of 42 C.F.R. § 422.2, the definitions provision of Part 422, which "establishes standards and sets forth the requirements, limitations, and procedures for Medicare services furnished, or paid for, by Medicare Advantage organizations through Medicare Advantage plans." 42 C.F.R.

§ 422.1(b). The claim concerns the definition of "service area."[7] Plaintiff challenges the purportedly unequal application of the county integrity rule to MA providers. Compl. ¶ 51. Plaintiff urges "the Court to consider what the original drafters' likely beneficial objectives may have been, as contrasted with the clearly neutered regulations and rules that now prevail." *Id.*

Section 422.2, which merely contains definitions, does not provide a private right of action. *Cf. Home Orthopedics Corp. v. Rodríguez*, CIV NO. 11-1591

---

[7] "Service area" is defined as:

> a geographic area that for local MA plans is a county or multiple counties, and for MA regional plans is a region approved by CMS within which an MA–eligible individual may enroll in a particular MA plan offered by an MA organization. Facilities in which individuals are incarcerated are not included in the service area of an MA plan. Each MA plan must be available to all MA–eligible individuals within the plan's service area. In deciding whether to approve an MA plan's proposed service area, CMS considers the following criteria:

> (1) For local MA plans:

> (i) Whether the area meets the "county integrity rule" that a service area generally consists of a full county or counties.

> (ii) However, CMS may approve a service area that includes only a portion of a county if it determines that the "partial county" area is necessary, nondiscriminatory, and in the best interests of the beneficiaries. CMS may also consider the extent to which the proposed service area mirrors service areas of existing commercial health care plans or MA plans offered by the organization.

42 C.F.R. § 422.2.

(DRD/SCC), 2012 WL 12533038, at *9 (D.P.R. May 21, 2012).  Indeed, a private

right of action does not even exist for Part 422's substantive provisions.  *See id.*

(holding that the plaintiff's "claims under the Medicare Advantage credentialing

regulations, 42 C.F.R. § 422.204 . . . fail[ed]" because the plaintiff "point[ed] to,

and [the court could] find, no authority suggesting that a private right of action

exists under this regulation").  Accordingly, the Court GRANTS the Motion and

DISMISSES Count 5 as to CMS.  Insofar as amendment would be futile, the

dismissal is without leave to amend.

CONCLUSION

In accordance with the foregoing, the Court HEREBY GRANTS CMS's

Motion in its entirety.  The Complaint is DISMISSED WITH PREJUDICE as

against CMS.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, December 3, 2019.



Jill A. Otake
United States District Judge

Civil No. 19-00364 JAO-WRP; *Winterbottom v. Underriner*; ORDER GRANTING DEFENDANT CATHERINE
A. KORTZEBORN'S  MOTION TO DISMISS COMPLAINT

26